IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MICHAEL OLIVER**
*Suing as King Michael Oliver,*
**# B-89925,**

    **Plaintiff,**

vs.                                             **No. 17-cv-00206-DRH**

**KIMBERLY BUTLER,**
**MAJOR LYERLA, and**
**SERGEANT SCOTT,**

    **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

This matter is now before the Court for preliminary review of four claims that Plaintiff King Michael Oliver brought pursuant to 42 U.S.C. § 1983 against officials at Menard Correctional Center. (Doc. 2). These claims were severed from another suit Plaintiff filed in this District. *See Oliver v. Lashbrook*, No. 17-cv-00169-DRH (S.D. Ill. Feb. 17, 2017) ("original case"). Plaintiff alleges that the Menard defendants violated his constitutional rights by transferring him from a cell on the "hill" to the "pit" (Counts 10 and 11), harassing him about his visitor's list (Count 12), and mishandling his grievances (Count 13).

The Court entered an initial order in this severed case on March 24, 2017. (Doc. 5). In it, the Court pointed to numerous instances in which Plaintiff indicated that he intended to supplement or amend the Complaint to add claims. (Doc. 5, pp. 2-3). The Court also noted that the exhibits appeared to be

incomplete or missing but were so poorly organized that it was impossible to tell. *Id.* Under the circumstances, the Court deferred preliminary review of the severed claims until Plaintiff had an opportunity to file a First Amended Complaint setting forth all of his related claims against Menard officials in a single complaint. (Doc. 5, pp. 3-4). The deadline for doing so was April 20, 2017. (Doc. 5, p. 4). Plaintiff was warned that failure to file an amended complaint or seek an extension of the deadline for doing so by April 20, 2017, would result in preliminary review of the severed claims based on the allegations set forth in the original Complaint. (Doc. 5, p. 5).

Plaintiff did not file a First Amended Complaint or seek an extension of the deadline. Therefore, Counts 10 through 13 are subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find

meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court deems it appropriate to exercise its authority under § 1915A. With one exception, the severed claims are subject to dismissal at this time.

## **The Complaint**

The factual allegations offered in support of Counts 10 through 13 are scattered throughout the Complaint and exhibits. (Doc. 2, pp. 1-23; Doc. 2-1, pp. 1-19). Because the Complaint addresses claims against officials at two different prisons, it is difficult to discern which allegations pertain to the claims against Menard officials and which allegations pertain to events at Pinckneyville. *Id.* To the extent possible, the Court has summarized the relevant allegations below.

According to the Complaint, Plaintiff requested a transfer out of Menard in 2015. (Doc. 2, p. 2). Major Lyerla denied his request and instead decided to transfer him from the "hill" to the "pit" at Menard. *Id.* The "hill" is a medium security unit at Menard, where Plaintiff was housed without incident. (Doc. 2, p. 3). The "pit" is a maximum security unit that is more dangerous. (Doc. 2, pp. 2-

3). Plaintiff claims that he did nothing wrong and should not have been transferred there. (Doc. 2, p. 3).

According to the Complaint, Defendants simply wanted to harass him. (Doc. 2, p. 3). Several prison officials, including Sergeant Scott, allegedly taunted Plaintiff for filing so many grievances and lawsuits and for referring to himself as "King Michael Oliver" on a visitor's list. (Doc. 2, pp. 3, 7, 16-17). On an undisclosed date, Sergeant Scott tore up the list in front of Plaintiff and threatened to kill him. (Doc. 2, pp. 7, 16). Plaintiff was then confined to his cell without shower access or recreational privileges for a "couple days." *Id.* When Plaintiff asked an officer for blank grievance forms, the officer retrieved the forms and delivered them to Plaintiff's cell with Sergeant Scott. (Doc. 2, p. 7). The sergeant said, "I double dog dare you to fill out those grievances." *Id.*

Plaintiff ignored the warning and submitted a grievance to complain about Sergeant Scott anyway. (Doc. 2, pp. 3, 7). In response, Major Lyerla called Plaintiff to his office and told Plaintiff that he did not believe him. (Doc. 2, pp. 7, 17). He believed the statements made by his officers. *Id.* The major then asked Plaintiff to explain why he referred to himself as "King." *Id.* When Plaintiff ignored the question and stated that he would submit his complaint directly to Warden Butler, Major Lyerla threatened to send him to the "pit" for doing so. *Id.* Plaintiff ignored Major Lyerla's warning and submitted a grievance directly to the warden. (Doc. 2, pp. 6-7, 16-18).

On or around July 22, 2015, he was transferred to the "pit." (Doc. 2, pp. 8, 18-19). His cell was so hot that Plaintiff feared he would suffer from heat stroke. *Id.* He submitted a written request for a fan and was provided with one a "couple" days later. *Id.* Plaintiff claims that his situation only got worse when one of his known enemies, David Sankey, was placed in his cell. (Doc. 2, p. 7; Doc. 2-1, p. 12). Plaintiff maintains that the two inmates were housed together in a remote area of the "pit" so that they would fight and injure or kill one another. *Id.* Plaintiff transferred to Pinckneyville on December 28, 2015, before this ever occurred. *Id.*

## Discussion

The instant case focuses on the following claims that were identified in the severance order (Doc. 1) and are expanded herein, as follows:

> **Count 10** – Claim against Major Lyerla and Sergeant Scott for denying Plaintiff's request for a transfer from Menard and instead transferring him from Menard's "hill" to the "pit" in 2015.
>
> **Count 11** – Claim against Warden Butler for conspiring with Major Lyerla at Menard to violate Plaintiff's constitutional rights and for responding to the transfer decisions with gross negligence.
>
> **Count 12** – Claim against Sergeant Scott for harassing and threatening Plaintiff at Menard because of his visitor's list.
>
> **Count 13** – Fourteenth Amendment due process and negligence claims against Major Lyerla and "others" for mishandling Plaintiff's grievances at Menard in order to prevent him from exhausting his administrative remedies.

(Doc. 1, pp. 7, 13). **Any other claims that arose at Menard and are not identified above are considered dismissed without prejudice from this action.**

The factual allegations offered in support of each claim are set forth in the discussion of each claim below.

## Count 10

The Complaint fails to articulate an Eighth or Fourteenth Amendment claim against Major Lyerla or Sergeant Scott for denying Plaintiff's request for a prison transfer. The Constitution does not guarantee placement in a particular prison. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). Given this, Plaintiff may not proceed with an Eighth or Fourteenth Amendment claim against the defendants for denying his prison transfer request. This portion of Count 10 shall be dismissed with prejudice.

However, the Court has expanded Count 10 to include a First Amendment retaliation claim against the same defendants. To state a claim, a prisoner must show that he: (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Plaintiff alleges that he was transferred from the "hill" to the "pit" after filing grievances to complain about the conditions at Menard and/or the defendants' conduct. According to the Complaint, Major Lyerla and Sergeant Scott were both responsible for the transfer. Major Lyerla made the final transfer decision, and Sergeant Scott carried it out. Both defendants allegedly did so after warning Plaintiff not to file grievances.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The allegations suggest that Plaintiff's decision to file the grievances was protected under the First Amendment.

The allegations further suggest that the protected conduct was at least a motivating factor in the defendants' decision to transfer Plaintiff to the "pit." Although the transfer decision, itself, is not actionable under § 1983, this same act taken in retaliation for the exercise of a constitutionally protected right is actionable.[1] *Bridges*, 557 F.3d at 552 (citing *Howland v. Kilquist*, 833 F.2d 639,

---

[1] The Complaint refers to other actions taken against Plaintiff, such as his placement in a cell without a shower or yard privileges for two days, his placement in a hot cell, and his placement with a known enemy. (Doc. 2, pp. 2-3). It is not clear who subjected Plaintiff to these conditions or whether Major Lyerla and Sergeant Scott were aware of them. *Id.* Consequently, these allegations do not factor into the Court's analysis of this claim, nor do they provide adequate support for an independent constitutional claim against the defendants.

644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under [§] 1983 even if the act, when taken for different reasons, would have been proper."); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner)).

Further, although the Complaint does not allege that the retaliatory activities "would 'deter a person of ordinary firmness' from exercising First Amendment activity in the future," the Court must construe the Complaint liberally at this stage. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The allegations of ongoing harassment and threats by the two defendants suggest that this requirement is satisfied as well. Whether the allegations are true and would actually deter a person of ordinary firmness are not questions that must be answered at the pleading stage. *See Bridges*, 557 F.3d at 552. The First Amendment retaliation claim in Count 10 survives screening and shall receive further review against Sergeant Scott and Major Lyerla.

### Count 11

The Complaint states no claim against Warden Butler for conspiring with Major Lyerla to violate Plaintiff's constitutional rights. The allegations of misconduct against this defendant are undeveloped. Plaintiff alleges that he submitted one or more grievances to Warden Butler, who conspired with Major

Lyerla to violate his constitutional rights and responded to his transfer request with "gross negligence."[2]

Plaintiff's vague and conclusory allegations are insufficient to state a claim against the warden under the pleading standard set forth in *Twombly*. In *Twombly*, the United States Supreme Court made it clear that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). Plaintiff offers virtually no factual support for his claims of conspiracy, constitutional deprivations, and gross negligence against the warden. And, although he alludes to one or more grievances that he sent to the warden, Plaintiff failed to describe the content of those grievances or direct the Court's attention to a copy of the grievances in his exhibits. The Court searched the exhibits for grievances addressed to the warden and found none. Under the circumstances, the Court is unable to discern the nature of the claim, the factual basis for it, or the warden's involvement in a constitutional violation. *See Hamilton v. City of New Albany, Indiana*, -- F. App'x --, No. 16-3901, 2017 WL 2615453 (7th Cir., decided June 16, 2017) (citing *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (liability under § 1983 requires personal involvement in a constitutional deprivation). Count 11 shall therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

---

[2] Negligence, or even gross negligence, on the part of a state official is insufficient to make out a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327, 331, 333-34 (1986).

## Count 12

The Complaint also fails to articulate a viable claim against Sergeant Scott, or any other defendants, for harassing Plaintiff about his use of "King Michael Oliver" on a visitor's list. The Complaint points to several instances in which Sergeant Scott and others questioned Plaintiff's use of "King" when referring to himself. Sergeant Scott allegedly destroyed the form containing this reference in Plaintiff's presence.

However, the allegations in the Complaint do not state a claim against Sergeant Scott or anyone else for questioning Plaintiff or taunting him. "[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment" under the Eighth Amendment. *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009). The "Constitution does not compel guards to address prisoners in a civil tone using polite language." *Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008). The Seventh Circuit has held that "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment [under the Eighth Amendment], deprive a prisoner of a protected liberty interest [under the Fourteenth Amendment] or deny a prisoner equal protection of the laws [under the Fourteenth Amendment]." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (collecting cases). *But see Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015) (dismissal of Eighth Amendment claim based on harassment was premature, where plaintiff alleged psychological trauma to the extent of seeking mental health care; harassment was

sexual in nature and included physical conduct beyond the verbal harassment; and harassment arguably placed plaintiff at greater danger of assault by other prisoners). The Complaint fails to state a claim against Sergeant Scott or any other Menard defendants for harassing Plaintiff about his use of "King Michael Oliver" on the visitor's list. Count 12 shall therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 13

Finally, the Fourteenth Amendment due process claim against the defendants for mishandling Plaintiff's grievances does not survive threshold review. Prison grievance procedures do not implicate the Due Process Clause per se because they are not constitutionally mandated. A prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Moreover, the mishandling of grievances by a prison official does not give rise to a related claim for the denial of access to the courts, as Plaintiff alleges. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). However, administrative remedies are considered to be unavailable under the PLRA when prison officials fail to respond to a prisoner's grievances.

*See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust administrative remedies and can proceed with his or her suit. *Id.*

The Complaint fails to state a claim against any of the Menard defendants for delaying, losing, or disregarding Plaintiff's grievances or for impeding Plaintiff's access to the courts. Count 13 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Disposition

**IT IS HEREBY ORDERED** that the only surviving claim is the First Amendment retaliation claim in **COUNT 10** against Defendants **MAJOR LYERLA** and **SERGEANT SCOTT**.

**IT IS ORDERED** that all other portions of **COUNT 10, COUNT 12,** and **COUNT 13** are **DISMISSED** with prejudice, and **COUNT 11** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendant **KIMBERLY BUTLER** is **DISMISSED** without prejudice from this action because the Complaint states no claim for relief against this defendant.

**IT IS FURTHER ORDERED** that as to the First Amendment retaliation claim in **COUNT 1**, the Clerk of Court shall prepare for Defendants **MAJOR LYERLA** and **SERGEANT SCOTT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).

The Clerk is **DIRECTED** to mail these forms, a copy of the original Severance Order (Doc. 1), Complaint (Doc. 2), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall

be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 28, 2017**

*David R. Herndon*

Digitally signed by Judge David R. Herndon
Date: 2017.06.28 16:10:01 -05'00'

**United States District Judge**