IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL OLIVER,

        Plaintiff,

v.

MAJOR LYERLA and
SERGEANT SCOTT,

        Defendants.

Case No. 17-CV-00206-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Major Lyerla and Sergeant Scott (Doc. 83). For the reasons set forth below, the Court grants the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Oliver brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, based on events that occurred while he was incarcerated at Menard Correctional Center. The claims at issue in this case were severed from another suit Oliver filed in this District (Doc. 1). The Court conducted a preliminary review of four remaining Counts in the Complaint pursuant to 28 U.S.C. § 1915A. Following that review, the only claim that remains in this case is Oliver's First Amendment retaliation claim against Defendants Lyerla and Scott for transferring him from Menard's "hill," the Medium Security Unit of Menard, to the "pit," the East House in the Maximum Security Area of Menard, after Oliver filed grievances to complain about the conditions at Menard and Defendants'

conduct (Doc. 7 at 7–8).

Following the preliminary review, Oliver filed his First Amended Complaint (Doc. 25). Oliver alleged Sergeant Scott along with additional officers came to his cell and aggressively questioned him about his use of the title "King" on a visitor list he sent for the warden's approval (*Id.* at 5). According to Oliver, Scott tore up the visitors list and threw it on the floor (*Id.*; Doc. 84–1 at 33). After this encounter, Oliver requested grievance forms from another official, who later returned with Scott, who then threatened Oliver, saying, "I double dog dare you to file those grievances" (Doc. 25 at 5). Despite this, Oliver filed a grievance for Scott's conduct (*Id.* at 8).

On July 21, 2015, Oliver was taken to Major Lyerla's office to discuss the grievance, and Oliver alleges Lyerla did not believe the events had taken place because he had known Scott for over 20 years (Doc. 25 at 5). During this meeting, Lyerla threatened to move him to the pit if he did not stop his use of the title King, and Oliver was transferred the next day, July, 22, 2015 (*Id.*; Doc. 84–1 at 9; Doc. 84-2).

Defendants filed the instant Motion for Summary Judgment and accompanying Memorandum in Support of the Motion on October 3, 2019, arguing they are entitled to summary judgment because Oliver's case is based upon pure speculation, Defendants did not violate his constitutional rights, and Defendants are entitled to qualified immunity (Docs. 83, 84). Attached to the Memorandum in Support, Defendants included Oliver's placement history (Doc. 84-2) and an affidavit by Terri Wingerter, the Placement Office Supervisor at Menard Correctional Center (Doc. 84-4). According to the affidavit, inmates can be moved from cell to cell for a variety of reasons, and Oliver's placement

history shows that his transfer that occurred on July 22, 2015 was a routine transfer (*Id.*). Moreover, Oliver was eligible for placement in either the Medium Security Unit or the Maximum Security Unit.

Oliver filed a Response in Opposition to Defendants' Motion for Summary Judgment on November 5, 2019, arguing that he lost several liberty interests due to the transfer, Defendants are not entitled to qualified immunity, there remain disputable facts, and that he cannot properly respond to the motion because of deprivations (Doc. 86). Defendants filed their Reply on November 19, 2019, arguing that Oliver does nothing more than conclusively argue he was transferred for his use of the title King despite there being documentation to show that it was a routine transfer (Doc. 89).

## LEGAL STANDARD

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

While the burden is on the moving party to show entitlement to summary judgment, Federal Rule of Civil Procedure 56(c)-(e), requires the non-moving party to properly address another party's assertion of fact. A party asserting that a fact is genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B). If a party fails to address any such assertion, the Court may consider the facts undisputed and can grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is so entitled. FED. R. CIV. P. 56(e)(2)-(3).

## DISCUSSION

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper"); *see also Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

To prevail on a First Amendment retaliation claim, a plaintiff must ultimately

show that he (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges,* 557 F.3d at 546 (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)).

The evidence before the Court is not sufficient for Oliver to make his *prima facie* case for retaliation. While it is undisputed that Oliver filed grievances during his incarceration at Menard, and the filing of the same is a recognized, protected First Amendment activity, *see DeWalt v. Carter*, 224 F.3d 607, 618 (2000), the evidence, when viewed in the light most favorable to Oliver, does not demonstrate that Oliver suffered a deprivation that would deter First Amendment activity in the future.

The standard for a retaliation claim is whether the retaliatory act would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *see also Bridges*, 557 F.3d at 555. Not every instance of retaliatory conduct amounts to a constitutional violation. As the Seventh Circuit noted in *Bart*, "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Id.* Indeed, threats of violence by prison guards have been held *not* to amount to retaliation. *See Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008); *see also Boclair v. Beardan-Monroe*, No. 10-cv-978-SWC, 2012 WL 3835874 (S.D. Ill. Sept. 4, 2012).

The extent of the Oliver's allegations of retaliatory conduct amount to a statement

by Scott and the transfer of Oliver from Menard's Medium Security Unit to the Maximum Security Unit. Even if Scott's statement is taken as a threat of violence, that statement alone does not amount to retaliation. Moreover, the transfer decision is not sufficiently adverse to amount to retaliation because the transfer does not amount to a serious change in circumstance, particularly when compared to other cases in which the Seventh Circuit has found a transfer decision could amount to retaliation. *See Babcock v. White*, 102 F.3d 267, 268–70 (7th Cir. 1996) (finding a retaliatory decision to delay transferring the plaintiff out of a life threatening situation could amount to a First Amendment right violation); *Higgason v. Farley*, 83 F.3d 807, 808–09 (7th Cir. 1996) (noting the plaintiff was transferred into a segregated housing unit which placed significantly more restrictions on his freedom, including being left in his cell for 23 hours a day); *Buise v. Hudkins*, 584 F.2d 223, 226, 229–30 (7th Cir. 1978), *abrogated in part on other grounds by Abdul-Wadood v. Duckworth*, 860 F.2d 280, 285 (7th Cir. 1988) (holding a prisoner's transfer from a minimum-security facility to a maximum-security facility could amount to retaliation).

Oliver advanced the argument that he suffered restrictions on his freedom stemming from the decision to transfer, including loss of a daily shower, access to a phone, more recreation time, exercise, fresh air, daily morning walks, weekly commissary shopping, and the opportunity to earn more money via state-pay (Doc. 86 at 3). Yet prisoners are subjected to harsher conditions than ordinary citizens. *See Giles v. Godinez*, 914 F.3d 1040, 1054 (7th Cir. 2019) ("Prison is, by its very nature, an unpleasant place to be."). "Thus, the disruption inherent in a transfer to a different facility does not by itself make the transfer adverse." *Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020). If Oliver

showed he was transferred into a life threatening situation, was restricted by the transfer in such a way that he was unable to engage in filing additional or other grievances, and/or that the transfer was not routine and was to a destination he was not otherwise eligible for transfer, for example, that may qualify as retaliation, but those facts do not exist here.

Accordingly, Oliver has failed to meet his burden of proof to show that the transfer was sufficiently adverse, so his First Amendment right to be free from retaliation was not violated. Because there was no constitutional violation, there is no need to analyze whether Defendants were entitled to qualified immunity. *See Holleman*, 951 F.3d at 882.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 83), **DISMISSES** the claims against them, and **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**

DATED:   August 4, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**